UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          |   |                          |
|--------------------------|---|--------------------------|
| EDWARD COOLEY,           | ) |                          |
|                          | ) |                          |
|    Petitioner, | ) |                          |
|                          | ) |                          |
| v.                       | ) | Civil No. 18-10258-LTS   |
|                          | ) |                          |
| ERIN GAFFNEY,            | ) |                          |
|                          | ) |                          |
|    Respondent. | ) |                          |

MEMORANDUM AND ORDER ON PETITION FOR HABEAS CORPUS (DOC. NO. 1)

August 21, 2018

SOROKIN, J.

Edward Cooley, a prisoner at the Old Colony Correctional Center in Bridgewater, Massachusetts, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he raises two challenges to his convictions and sentences. The respondent has opposed the petition. Because his claims are meritless, Cooley's petition is DENIED.

I.    BACKGROUND

In September 2011, following a jury trial in Hampden County Superior Court, Cooley was convicted of first-degree murder, unlawful possession of a firearm, and wilful interference with a criminal investigation, all in violation of Massachusetts law. Commonwealth v. Cooley, 78 N.E.3d 77, 79 (Mass. 2017); Doc. No. 1 at 1-2;[1] S.A. at 1-2, 8.[2] He received a mandatory sentence of life imprisonment without the possibility of parole. Doc. No. 1 at 1; S.A. at 8.

---

[1] Citations to items on the Court's electronic docket reference the assigned document number and the page number from the ECF header at the top of each page.
[2] The respondent has filed a Supplemental Answer ("S.A.") attaching the state-court record in four bound volumes. Doc. No. 17.

The charges against Cooley arose from a shooting in Springfield. Cooley, 78 N.E.3d at 49. The Supreme Judicial Court ("SJC") summarized the evidence presented at trial as follows:

> At approximately 12:20 A.M. on March 20, 2010, . . . a witness heard two shots fired. She looked out her window and saw two men speaking in a "panicking way"; the men then ran in opposite directions. Other witnesses also heard the gunshots, soon followed by the sound of a motor vehicle crashing. The victim's motor vehicle had crashed through a fence, struck another vehicle, and come to a stop in the yard of one of the witnesses. The victim was slumped over in the driver's seat and bleeding heavily.
>
> As the witnesses approached the vehicle, [Cooley], wearing a leather jacket, ran up yelling, "It's my god-brother," and "Don't call the cops[;] the guy[']s got weed on him." He climbed into the vehicle, pulled the victim slightly toward him while patting him down, and took the victim's cellular telephone. He also took a bag from behind the victim's seat, where police later found two bags containing marijuana. After getting out of the motor vehicle, [Cooley] told the witnesses to telephone the police and left the scene. . . . [T]he victim sustained injuries consistent with a bullet traveling through his right arm and into his chest. He was pronounced dead a short time later at a hospital.
>
> Police were directed to [Cooley], who had since returned to the area (without his leather jacket). [Cooley] was interviewed at the scene and twice more at the police station. As investigators uncovered further evidence, [Cooley] changed portions of his statement. For example, after first denying it, he eventually admitted that the leather jacket, found hidden a short distance away from where the victim and his vehicle had crashed, was his. The jacket tested positive for gunshot primer residue on the cuffs, indicating that the jacket may have been within three feet of a gun when it was fired. The jacket also was stained with blood that matched . . . the victim. [Cooley] admitted to taking the victim's cellular telephone from the motor vehicle after the crash only after police recovered it from a motor vehicle belonging to [Cooley's] girlfriend.
>
> Other portions of [Cooley's] statements to police were proved false at trial. For example, [Cooley] stated that he had happened to meet the victim at a pharmacy store hours before the shooting, but surveillance video recordings from inside and outside the store showed the victim there alone. [Cooley's] claim that he had been on the telephone with the victim at the time of the shooting was belied by telephone records that showed that there were no telephone calls between [Cooley] and the victim at any point prior to the shooting.
>
> The telephone records also showed that . . . both [Cooley and the victim] were in touch with a third party, who had a telephone number ending in 7471, in the hours before the killing. There were numerous calls between the victim's number and the 7471 number, culminating with a call made minutes before the shooting. In addition, the records indicated that there were calls during the night prior to the

shooting between [Cooley's] number and the 7471 number until 9:42 P.M. Another call was made from [Cooley's] number to the 7471 number soon after [Cooley] finished giving his second statement at the police station.

Id. at 79-80.

The prosecution's theory of the case was that Cooley "and an unidentified person were involved in a joint venture to rob the victim, that either one or the other shot the victim during the course of the robbery, and that [Cooley] completed the robbery after the shooting at the site of the crash." Id. at 80. The jury returned a general verdict, convicting Cooley of murder without specifying whether they had concluded he was the shooter. S.A. at 21.

Cooley filed a timely direct appeal challenging the trial court's denial of his motion for a judgment of acquittal on the murder, armed robbery, and firearms charges. S.A. at 9; Doc. No. 1 at 2. Shortly thereafter, Cooley's trial counsel learned from the prosecutor that, during an interview conducted by police months before Cooley's trial regarding an unrelated murder, a witness said he had heard another man (not Cooley) confess to having shot the victim in Cooley's case. Cooley, 78 N.E.3d at 82. In light of this disclosure, Cooley filed a motion for a new trial alleging a violation of Brady v. Maryland, 373 U.S. 83 (1963). S.A. at 9; Cooley, 78 N.E.3d at 79. The trial court denied Cooley's motion after a hearing, S.A. at 14-32, and the SJC consolidated his appeal of that ruling with his direct appeal, Cooley, 78 N.E.3d at 79. The SJC affirmed Cooley's convictions and sentence in a July 13, 2017 decision. Id.

In his timely federal habeas petition, Cooley advances the same two challenges considered and rejected by the SJC: 1) that the prosecution violated its Brady obligations when it failed to disclose the witness statement concerning another man's admission "to having done the murder," Doc. No. 1 at 5; and 2) that the evidence was insufficient to prove him guilty of

3

murder, armed robbery, and possession of a firearm, id. at 7.[3] Cooley's petition is fully briefed and ripe for resolution.[4]

II.     LEGAL STANDARD

State court decisions merit substantial deference. Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Supreme Court repeatedly has emphasized, these standards are "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Burt v. Titlow, 571 U.S. 12, 19-20 (2013) (emphasizing "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems).

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision

---

[3] Cooley articulates this claim as a challenge to the trial court's denial of his motion for a judgment of acquittal on these charges, but for federal habeas purposes it amounts to a constitutional challenge to the sufficiency of evidence proving the relevant offenses.
[4] In his brief, Cooley accuses his trial counsel of "foolishly neglect[ing] to have" various seemingly valuable items recovered by police from the victim's car "admitted into evidence," suggesting such evidence would have challenged the theory that the shooting occurred in the course of a robbery. Doc. No. 4 at 2. He clarifies, however, that he is not advancing a counsel ineffectiveness claim here, id., nor could he, as he did not exhaust such a claim in state court.

4

of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); see Glebe v. Frost, 135 S. Ct. 429, 431 (2014) (emphasizing that "circuit precedent does not constitute 'clearly established Federal law'" for these purposes). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); see Renico v. Lett, 559 U.S. 766, 779 (2010) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state courts"). Relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550

5

U.S. 465, 473 (2007); Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (explaining habeas relief is appropriate only if a state court ruling is "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options" (quotation marks omitted)).

Federal courts ordinarily must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); see Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (discussing the "separate and exacting standard applicable to review of a state court's factual findings").

III. DISCUSSION

    A. Prosecutorial Misconduct

Cooley first asserts that his constitutional rights were violated when prosecutors "withheld evidence that someone else admitted shooting [the victim] until well after the trial was over." Doc. No. 4 at 4. This information, he argues, was exculpatory and was specifically requested by his trial counsel. Id. at 4-7. Cooley claims the withheld witness statement likely would have altered the outcome of his trial, based on his view that the jury "[o]bviously" concluded Cooley was the shooter, and "evidence that another person with no discernable ties to Cooley admitted to [the] killing" would have undercut that conclusion.[5] Id. at 7.

The SJC deferred to the trial court's finding that the evidence in question was exculpatory (it would have required proof of Cooley's "role as a coventurer only, and not as the principal," even if it did not rule out his participation in the charged crimes), and noted the

---

[5] The trial court described the individual who allegedly confessed to the shooting as a cousin to Cooley's girlfriend, S.A. at 19-21, providing reason to believe he did, in fact, have "discernable ties" to Cooley. The Court's resolution of Cooley's petition, however, does not turn on this fact.

6

Commonwealth's concession that the evidence was within the scope of a specific discovery request made by Cooley's counsel in advance of his trial. Cooley, 78 N.E.3d at 82-83 & n.4. Nevertheless, the SJC upheld the trial court's finding that failure to disclose the evidence had not resulted in prejudice warranting a new trial, concluding "proof that [Cooley] was not the shooter was immaterial given the strength of the evidence that he was present at the time of the shooting and participated in the armed robbery." Id. at 83. According to the SJC, "the evidence of [another man's] claimed admission of having shot the victim was more likely to fill in the gaps of the joint venture (by identifying the second participant) than to demonstrate [Cooley's] innocence." Id. at 84.

The state courts' rulings were neither contrary to, nor unreasonable applications of, Brady or any other clearly established federal law. Brady requires prosecutors to produce "evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment." 373 U.S. at 87. For evidence to fall within the scope of that disclosure requirement, it must be "favorable to the accused, either because it is exculpatory, or because it is impeaching, . . . and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "[T]here is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."[6] Id. at 281; accord Kyles v. Whitley, 514 U.S. 419, 421-22 (1995).

As the respondent observes, the circumstances presented here bear many similarities to those the Supreme Court considered in Brady itself. In each case, the defendant faced murder

---

[6] Although the SJC analyzed this claim citing only its own prior decisions, the standard it applied included a prejudice inquiry "more favorable" to a defendant than Brady. Healy v. Spencer, 453 F.3d 21, 25 (1st Cir. 2006). Explicit reference to the stricter federal standard is not required. Zuluaga v. Spencer, 585 F.3d 27, 31 (1st Cir. 2009).

7

charges arising from a killing committed in the course of an armed robbery. 373 U.S. at 84. In each case, the defendant allegedly acted with a coventurer. Id. In each case, defense counsel learned only after trial that police had withheld evidence that the coventurer at some point had admitted to doing the actual killing. Id. And, in each case, the state courts concluded that, although the prosecution's failure to disclose the evidence was improper, no new trial was warranted because the evidence would not have altered the jury's finding of guilt.[7] Id. at 88. These parallels suggest the SJC's analysis comported with Brady.

Moreover, this Court's review of the record confirms the reasonableness of the SJC's assessment that strong evidence established Cooley's guilt of all charges as a coventurer. The Commonwealth presented ample evidence of his presence at the scene of the shooting moments after it occurred, his removal of items from the victim's car, his apparent coordination with an unidentified third party who also was in touch with the victim at key times leading up to the shooting, and his conduct and statements which reasonably demonstrated consciousness of guilt, including his efforts to hide a bloody jacket (which later yielded evidence suggesting he was very close to a gun when it was fired) and his numerous demonstrably false statements to police. In these circumstances, this Court will not second-guess the state courts' sensible conclusion that the withheld evidence might have identified Cooley's coventurer, but very likely would not have caused jurors to reach a different verdict.

Accordingly, Cooley's challenge to the SJC's rejection of his Brady claim is meritless.

---

[7] In Brady, new penalty-phase proceedings were ordered based on the withheld statement, 373 U.S. at 85, as evidence that Brady had not personally committed the killing might reasonably have mitigated against a death sentence. In Massachusetts, a life sentence is mandated for first-degree murder irrespective of whether a defendant is guilty as a principal or a coventurer, Mass. Gen. Laws ch. 265, § 2(a), so the materiality inquiry here is limited to the question of guilt.

B.   Sufficiency

Next, Cooley attacks the sufficiency of evidence demonstrating he committed murder, armed robbery, and unlawful possession of a firearm. Doc. No. 4 at 7-8. He argues that the Commonwealth's case "relied for proof mostly upon consciousness of guilt evidence, and an insubstantial connection with an unknown hypothetical accomplice." Id. at 8. He posits an alternate way of viewing the evidence against him, that is, that he was a drug user looking to purchase marijuana, only to discover that his dealer had been shot, and that he reacted out of fear, taking what he could from the car and later lying to witnesses and police. Id. at 9-12.

The SJC considered and rejected Cooley's sufficiency claim on its merits, finding adequate proof of Cooley's intent to participate in a robbery, his knowledge that his accomplice possessed a gun, and his actual taking of the victim's property. 78 N.E.3d at 81. The SJC recounted the evidence in some detail,[8] emphasizing Cooley's awareness that the victim sold marijuana, his admission to having taken a phone and a bag from the car, the phone records suggesting coordination with a coventurer to plan the encounter with the victim, the reasonableness of an inference that any plot to rob a drug dealer might include a gun, the gunshot residue found on Cooley's jacket cuffs, and Cooley's post-crime conduct including hiding evidence and lying to witnesses and police. Id. at 81-82. Although the SJC noted Cooley "offered alternative explanations for his actions," its sufficiency review did not permit it to "weigh supporting evidence against conflicting evidence." Id. at 82.

The SJC's analysis was neither contrary to, nor an unreasonable application of, clearly established federal law. Because consideration of Cooley's claim here is subject to the limited

---

[8] Cooley has not challenged the SJC's recitation of the evidence, nor has this Court's review identified any clear errors or unreasonable factual determinations.

9

scope of habeas review, this Court "do[es] not ask, as [it] might on direct review of a conviction in federal court, whether the evidence was constitutionally sufficient. [It] ask[s], instead, whether the state courts' ruling that the evidence is constitutionally sufficient was itself 'unreasonable.'" Winfield v. O'Brien, 775 F.3d 1, 8 (1st Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1)). The relevant "clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), for purposes of a sufficiency challenge is Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, a petitioner prevails on a sufficiency-of-evidence claim only if he demonstrates that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. Jackson requires "a federal habeas court faced with a record of historical facts that supports conflicting inferences [to] presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution." Winfield, 775 F.3d at 9.

After summarizing the trial record in some detail, the SJC concluded that the Commonwealth's evidence, though "circumstantial," was sufficient to support a finding that Cooley was guilty as a coventurer of robbing and killing the victim, and of possessing a firearm.[9] 78 N.E.3d at 82. This Court's own review of the record confirms that the SJC's decision was a reasonable one, and was fully consistent with the sufficiency principles articulated in Jackson. Even assuming the only available theory of guilt as to Cooley was that he aided and abetted the

---

[9] Contrary to Cooley's suggestion, Massachusetts law, including before the time of his trial, permits a defendant to be convicted of a possessory offense as a joint venturer, even absent proof of actual or constructive possession. Commonwealth v. Humphries, 991 N.E.2d 652, 658 (Mass. 2013); Commonwealth v. Brown, 737 N.E.2d 1, 4 (Mass. App. Ct. 2000).

10

shooter as part of a joint venture, the evidence was plainly sufficient to permit a rational trier of fact to convict Cooley of the relevant charges.

In particular, the record contains evidence, referenced above, showing: both Cooley and the victim exchanged series of phone calls with someone at the same telephone number leading up to the shooting; witnesses saw two men fleeing the area immediately after the shooting; Cooley was at the scene of the shooting moments after witnesses heard gunshots and a car crash; Cooley asked witnesses not to call police while he entered the car and removed items belonging to the victim; Cooley then fled, only to return to the scene having hidden his jacket and the items he took; Cooley told authorities he knew the victim was a drug dealer; Cooley lied to police about the nature of his relationship with the victim, whether he saw or spoke with the victim before the shooting, whether he had a jacket, and whether he had taken the victim's phone; and Cooley's jacket had both the victim's blood and gunshot residue on it. From some combination of these facts, the jury inferred Cooley was guilty and rejected the alternate view offered here by Cooley (and argued by defense counsel on his behalf at trial). In doing so, jurors resolved any conflicts in the evidence in the Commonwealth's favor. This Court is obligated to "defer to that resolution," Winfield, 775 F.3d at 9, so Cooley is not entitled to relief on his sufficiency claim.

IV. CONCLUSION

For the foregoing reasons, Cooley's habeas petition (Doc. No. 1) is DENIED.[10]

                                                      SO ORDERED.

                                                       /s/ Leo T. Sorokin
                                                      United States District Judge

---

[10] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), no certificate of appealability shall issue. As explained fully above, the state courts identified the correct legal standards and applied them reasonably in rejecting both of Cooley's federal claims.

11